**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Galena Kaye Duarte Lopez,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV-15-01541-PHX-DGC<br><br>**ORDER** |

Plaintiff Galena Kaye Duarte Lopez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the ALJ's decision contains reversible error and there are no substantial grounds for doubting that Lopez is disabled, the Court will remand for an award of benefits.

**I.    Background.**

Lopez is a 49-year-old female who previously worked as an office clerk, fast food worker, hospital worker, and production line worker. A.R. 38-39. On November 14, 2011, Lopez filed an application for disability insurance benefits and supplemental security income, alleging disability beginning December 31, 2008. A.R. 26. On August 14, 2013, an ALJ held a hearing on the application. A.R. 50-85. Lopez appeared with her attorney and testified. A vocational expert also testified. *Id.*

1    On December 18, 2013, the ALJ issued a decision that Lopez was not disabled
2 within the meaning of the Social Security Act. A.R. 26-40. The decision proceeded
3 according to the five-step evaluation process set forth at 20 C.F.R. § 404.1520(a)(4). At
4 step one, the ALJ found that Lopez had not engaged in substantial gainful activity at any
5 time between the alleged onset date and the date of decision. A.R. 28. At step two, the
6 ALJ found that Lopez had the following severe impairments: lumbar degenerative disc
7 disease, bilateral carpal tunnel syndrome (status post-right release), cervical spine
8 degenerative disc disease and joint disease, thoracic spine spondylosis, and bilateral knee
9 osteoarthritis. A.R. 28. At step three, the ALJ determined that Lopez did not have an
10 impairment or combination of impairments that met or medically equaled an impairment
11 listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 31. At step four, the ALJ
12 found that Lopez had the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for 4 hours in an 8-hour workday with normal breaks. She can sit for 6 hours in an 8-hour workday with normal breaks. The claimant has no limitations with pushing and pulling as long as within the weight restrictions above. She can occasionally climb ramps and stairs, stoop, kneel, and crouch. She should never climb ladders, ropes, or scaffolds or crawl. She is limited to frequent fingering, handling, and feeling bilaterally with the upper extremities. The claimant should avoid even moderate exposure to unprotected heights. The claimant may need to use a cane for balance when ambulating.

19 A.R. 33. The ALJ found Lopez unable to perform any of her past relevant work.
20 A.R. 38. At step five, the ALJ concluded, considering Lopez's age, education, work
21 experience, transferrable skills, and RFC, that there were jobs existing in significant
22 numbers in the national economy that she could perform, including appointment clerk
23 and address clerk. A.R. 39. The Appeals Council denied Lopez's request for review,
24 making the ALJ's decision final. A.R. 1.

25 **II.   Legal Standard.**

26    The district court reviews only those issues raised by the party challenging the
27 ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court
28 may set aside the Commissioner's disability determination only if the determination is

not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.   Symptom Testimony.

In evaluating the claimant's symptom testimony, ALJs must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant has presented such evidence, the ALJ proceeds to consider "all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant]," her doctors, and other persons to determine the persistence and intensity of these symptoms. § 404.1529(c)(1). If there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Lopez testified that she was unable to work because of pain in her hands, knees, and lower back. A.R. 57-58. She rated her pain as an 8 out of 10, and stated that she was unable to obtain pain medication due to lack of insurance. A.R. 61. She testified that her pain prevented her from lifting heavy objects, sitting for more than two hours at a time, or standing or walking for more than 25 minutes at a time. A.R. 59-60, 64-65.

The ALJ determined that Lopez's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements

concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. A.R. 33-34. The ALJ found Lopez's testimony not entirely credible because: (1) she failed to account for the benefit she previously received from medication; (2) the alleged limitations were inconsistent with her "somewhat normal level of daily activity and interaction"; (3) her complaints of debilitating pain were not supported by clinical or laboratory findings; and (4) her testimony was marred by a variety of inconsistencies. A.R. 33-36. Lopez challenges each of these findings.

### A.   Benefit of Treatment.

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, the ALJ is entitled to discount a claimant's symptom testimony if the testimony relates to a period when the claimant was not using medication or other treatment, and there is evidence that the symptoms in question could have been effectively controlled with treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (in evaluating symptom testimony, ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms," as well as treatments other than medication).

The ALJ found that Lopez had been prescribed and taken appropriate medications for her impairments, and that the medications had been "relatively effective in controlling [her] symptoms." A.R. 34. The ALJ explained:

> While the claimant has no medications due to lack of insurance coverage, the treating and progress notes prior to her loss of insurance indicate she received benefit from such medications and treatments in alleviating her symptoms. In December 2009, January 2010, February 2010, March 2010, and April 2010 the claimant reported the pain symptoms have been somewhat controlled with the medication regimen. [citing A.R. 388, 392, 397, 404, 410, 414]. On January 19, 2010 and February 4, 2010, the claimant reported that she noticed a "significant decrease" in the pain after the [steroid] injections to her knees. [citing A.R. 397, 404]. Progress notes from Valley Orthopedics in January 2013[] show[] the claimant reported a 70% improvement in her pain after undergoing caudal epidural steroid injections. [citing A.R. 780]. The claimant's allegations of severity and intensity are not supported as she has been able to manage her condition with medication when compliant and actively treating with providers.

1  *Id.*  The Commissioner points to additional record support for the ALJ's position.  *See*
2  A.R. 495 (injections to Lopez's knees provided "tremendous relief but unfortunately
3  wore off within approximately a month"), 601 (bilateral lumbar radiofrequency ablation
4  provided "excellent benefit"), 604 ("bilateral lumbar medial branch nerve blocks . . . gave
5  her 80% relief for one day").[1]

6  The ALJ's analysis demonstrates that Lopez pain was somewhat responsive to
7  medication and other treatment.  But to reject a claimant's testimony, it is not enough for
8  the ALJ to show that the pain was responsive to treatment; the ALJ must show that the
9  pain was "controlled," *Warre*, 439 F.3d at 1006, i.e., no longer debilitating.  The fact that
10  a claimant experienced a brief period of reprieve following treatment does not support a
11  finding that her pain was controlled.  Rather, the ALJ must show that the treatment was
12  capable of providing lasting relief.  *Cf. Flaten v. Sec'y of Health & Human Servs.*, 44
13  F.3d 1453, 1462 (9th Cir. 1995) ("individuals whose disabilities include periods of
14  remission will lose their disabled status only if they are able to engage in substantial
15  gainful activity" during the period of remission).

16  None of the evidence relied upon by the ALJ or the Commissioner supports a
17  finding that Lopez's pain was controlled.  Even when Lopez's doctors reported that
18  treatment had improved Lopez's symptoms, they consistently found that she remained in
19  significant pain.  *See, e.g.*, A.R. 388 (although Lopez's pain had been "somewhat
20  controlled" by medication, she continued to report pain between 5/10 and 10/10), 397
21  (despite "significant decrease in the pain after the injection," Lopez reported pain level
22  between 3/10 and 4/10), 780 (although caudal lumbar epidural steroid injections reduced
23  Lopez's pain by 70%, she continued to report pain between 5/10 and 8/10).  Moreover,
24  the relief she experienced was short-lived.  *Compare* A.R. 397 (reporting pain level

---

26  [1] Although the Court may not affirm the ALJ's decision based on grounds not set
27  forth in the ALJ's opinion, the Court can consider evidence not specifically mentioned in
    the opinion if it was available to the ALJ and supports the ALJ's stated grounds for
28  decision.  *Warre*, 439 F.3d at 1005 n.3.

- 5 -

between 3/10 and 4/10, one week after knee injection administered January 12, 2010) *with* A.R. 404 (reporting pain levels between 5/10 and 10/10 less than a month later, on February 4, 2010); *see also* A.R. 495 (injections to Lopez's knees provided "tremendous relief but unfortunately wore off within approximately a month"). In short, there is no evidence that Lopez was able to keep her pain at a manageable level for an extended period of time, even with aggressive treatment. Because substantial evidence does not support the ALJ's finding that Lopez could control her pain with medications or other treatments, it was error to reject Lopez's symptom testimony on this basis.

### B. Clinical and Laboratory Findings.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). It was not a factor the ALJ could consider here, however, because the objective medical evidence amply supports Lopez's allegations of chronic, debilitating pain. For example, Lopez's treating physician, Dr. Edward Sayegh, included "obvious pain and discomfort" among the objective findings of his physical examinations on 24 occasions.[2] Lopez's pain specialist found that she "does have a legitimate pain generator and is in significant pain." A.R. 612. Lopez's doctors prescribed very aggressive treatment for her pain, including carpal tunnel surgery for both hands, A.R. 569-70, lumbar radio frequency ablation, A.R. 601, steroid injection in the knees, A.R. 396, steroid injections for the back, A.R. 714, physical therapy, wrist braces, A.R. 739, and multiple narcotics, A.R. 519. Doctors have recommended "total knee replacement" to address "significant arthritic change of the knee joints" including "bone on bone changes." A.R. 496, 739, 721. Doctors have suggested that back surgery may be required if steroid injections are not successful in providing lasting relief. A.R. 890, 714. The ALJ herself recognized that "[t]he claimant has been prescribed and has taken appropriate medications" to control her pain. A.R. 34. In sum, the medical

---

[2] *See* A.R. 670, 676, 678, 680, 682, 686, 688, 690, 692, 694, 696, 698, 700, 702, 703, 706, 708, 710, 919, 923, 928, 931, 933, 936.

evidence strongly corroborates Lopez's complaints of debilitating pain.

### C. Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added).

In this case, the ALJ determined that Lopez's reported daily activities "are not quite as limited as one would expect, given the allegations of disabling pain and symptoms." A.R. 32. Specifically, she relied on daily activity reports indicating that Lopez was able to use public transportation, do housework with rest breaks, assist with grocery shopping, manage money, prepare simple foods, visit with friends frequently, and visit her 11-year old daughter. *Id.* (citing A.R. 531-40, 642-48). But the ALJ did not find that Lopez spent a substantial part of her day engaged in these activities. Moreover, the daily activity reports on which the ALJ relied also document significant limitations that are consistent with Lopez's symptom testimony. *See* A.R. 534 (Lopez can't bathe, do dishes, or stand for long periods of time), 537 (Lopez has difficulty bathing because "[h]er hands and legs make this very hard"), 643 ("Ms. Lopez's boyfriend is mostly responsible for the cooking, cleaning, laundry, and grocery shopping. She assists, when she feels well enough to help."). The Court accordingly finds that the ALJ was not entitled to discount Lopez's symptom testimony based on her daily activities.

### D. Inconsistencies in Testimony.

In evaluating a claimant's symptom testimony, the ALJ may consider evidence

- 7 -

that a claimant "lack[s] . . . candor," for example, because she has misrepresented her history of drug and alcohol consumption. *Thomas*, 278 F.3d at 959; *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). In this case, the ALJ pointed to evidence suggesting that Lopez failed to exhibit candor in discussing various issues unrelated to her symptoms. The ALJ noted that Lopez claimed to have been diagnosed with fibromyalgia, but the record did not confirm the diagnosis. A.R. 34. Lopez claimed a history of sleep apnea, but she never obtained a sleep study or C-PAP machine despite doctor recommendations that she do so. A.R. 32. Lopez testified that she does not do anything during the day and has no friends, but then testified that she spends her day at home, with someone always with her, either her friend or father, and is never alone. *Id.* The ALJ also found inconsistencies in Lopez's statements regarding drug use:

> The claimant reported at the July 2012 mental consultative examination that she had used marijuana, methamphetamine, cocaine, [and] heroin in the past, but stopped around 2006. However, the records confirm [that] in November and December 2011, the claimant had urine drug screens that tested positive for methamphetamines. Her pain management specialist subsequently discharged the claimant in February 2012 due to noncompliance and violation of the opioid agreement with use of illicit drugs. The record also shows a positive urine drug screen in October 2009 for amphetamines and positive urine drug screen for cocaine, amphetamine, and opiates in June 2010, though she denied use of any illicit drugs . . . .

A.R. 35.

These certainly are specific reasons for discounting Lopez's claim of debilitating conditions, but are they clear and convincing? *Vasquez*, 572 F.3d at 591. On one hand, they constitute inconsistencies that could be viewed as undermining Lopez's truthfulness. On the other hand, as Lopez notes, "numerous medical sources, including the Agency's own psychologists, found [her] to be a credible reporter of her impairment related symptoms." Doc. 19 at 11, *citing* A.R. 532 (Lopez "seems to be a reliable reporter" of her symptoms), 645 ("there were no notable discrepancies" in the information provided by Lopez). Moreover, as discussed above, Lopez's doctors repeatedly observed her in significant pain and prescribed aggressive treatment for her pain, including surgeries.

- 8 -

Although a close question, the Court concludes that it should defer to the ALJ on this issue. As noted above, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## IV. Medical Source Evidence.

Lopez argues that the ALJ committed harmful error by improperly discounting the opinions of Edward Sayegh, M.D., her treating physician, and John Peachey, M.D., an examining physician.

### A. Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record

as a whole[ ] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**B.     Dr. Sayegh.**

Dr. Sayegh has been Lopez's treating physician since at least 2010. On November 1, 2011, Dr. Sayegh provided a medical opinion that, during an eight-hour work day, Lopez would be limited to sitting for less than two hours, standing less than two hours, lifting less than ten pounds, and carrying less than ten pounds. A.R. 766. He further opined that she could never use her hands or feet, or bend, crawl, climb, crouch, or kneel. *Id.*  He stated that Lopez's ability to work would be further limited by moderately severe pain and fatigue. A.R. 767. He concluded that Lopez would be unable to work on a regular and consistent basis. A.R. 766.

On July 26, 2013, Dr. Sayegh provided another opinion. He reported that Lopez suffered from morbid obesity, degenerative disc disease, chronic pain syndrome, and carpel tunnel syndrome. A.R. 917. He stated that it was medically necessary for Lopez to alternate between sitting, standing, and walking, that she should alternate position every 21-45 minutes, and that she should rest for between 10-15 minutes upon changing position. *Id.* He opined that Lopez could occasionally use her right hand and right foot

but should never use her left hand or left foot, and should never bend, reach, or stoop. *Id.* He further opined that Lopez suffered severe pain, and that she would have to miss work six or more days per month due to her condition. A.R. 918. He reaffirmed his prior conclusion that Lopez would be unable to work on a regular basis. A.R. 917.

The ALJ assigned "no weight" to Dr. Sayegh's opinions, finding them (1) "totally inconsistent and extreme in light of the objective evidence of record"; (2) "inconsistent with the doctor's own clinical and exam findings"; and (3) unduly reliant on Lopez's subjective complaints. A.R. 37-38. The limitations assessed by Dr. Sayegh are inconsistent with those assessed by the state agency physicians. A.R. 111, 129-31, 150-51. Therefore, the Court must determine whether the ALJ's reasons for rejecting Dr. Sayegh's opinions are specific and legitimate reasons supported by substantial evidence. *Cotton*, 799 F.2d at 1408.

### 1. The ALJ's First Reason.

The ALJ found that Dr. Sayegh's opinion was extreme and inconsistent with the greater evidence of record. That is not a specific reason for rejecting his opinion. The ALJ does not explain what evidence in the record contradicted Dr. Sayegh's opinion. Moreover, characterizing a medical opinion as "extreme" provides little information about perceived defects in the opinion. Presumably, most medical evaluations of disabled individuals assess extreme limitations.

### 2. The ALJ's Second Reason.

The ALJ found that Dr. Sayegh's opinion was inconsistent with his own clinical and exam findings. She explained:

> The doctor's treating notes generally document a normal musculoskeletal exam, except for bilateral knee pain, general myalgia, and decreased range of motion of the lumbar and cervical spine. . . . There are no reports of decreased strength in the upper extremities in his records, though the doctor opinioned no use of the hands, without explanation or basis for such limitation, and [such a limitation is] completely inconsistent with her activities of daily living.

A.R. 37-38 (citing A.R. 667-718, 919-37).

It is true that Dr. Sayegh's notes consistently report a normal musculoskeletal

- 11 -

exam, except for bilateral knee pain, general myalgia, and decreased range of motion of the lumbar and cervical spine. But the ALJ does not explain why bilateral knee pain, general myalgia, and decreased range of motion of the lumbar and cervical spine are insufficient to support the limitations assessed in Dr. Sayegh's opinions. Dr. Sayegh's notes document a variety of debilitating symptoms related to these conditions.[3] These symptoms are consistent with the limitations Dr. Sayegh assessed related to sitting, lifting, standing, walking, carrying, and chronic pain.

It is also true that Dr. Sayegh's notes do not report decreased strength in the upper extremities, but Dr. Sayegh stated that he reviewed Lopez's other medical records and took them into account in assessing limitations. A.R. 767, 918. Lopez's other medical records indicate that she did have significant limitations related to her hands. A.R. 570 (notes from Lopez's right carpal tunnel release surgery), 906 (diagnosing bilateral carpal

---

[3] *See* A.R. 667-68 (noting Lopez's complaint that knee pain was "chronic problem . . . that makes it debilitating for her to walk;" reporting unsteady gait, weakness with weight bearing or walking, sensation of giving way, and locking or blocking (inability to fully bend or extend the knee)), 669-70 (noting Lopez's complaint of difficulty with ambulation), 683-84 (noting complaint of radiating pain, decreased range of motion, pain in joint area causing difficulty with ambulation, decreased ability to accomplish daily tasks), 686 ("obvious pain and discomfort and discomfort/difficulty with ambulation"), 687 (reporting "general myalgia . . . weakness/p[ain] in lower ext[remities] especially joints of knee causing difficulty with ambulation), 689 (noting Lopez's complaint that the pain/stiffness in the back and legs was disrupting daily life), 691 (noting Lopez's complaint of pain and daily anxiety/depression causing disruption to daily activities and tasks), 693 (noting Lopez's complaint that her difficulty with ambulation was causing interruptions in her daily life), 695 (noting Lopez's complaint that "pain, anxiety and sleeplessness are disruptive to daily life, activities and ability to rest"), 697 (noting Lopez's complaint of difficulty ambulating, "anxiety and depression with daily limitations due to condition of pain"), 699 (noting Lopez's complaint of fatigue and other limitations from pain), 701 (assessing pain and stiffness imposing work limitations), 705 (same), 707 (same), 709 (same), 922 (reporting weakness with weight bearing and walking, sensation of giving way, and locking or blocking of knee), 925 (same, noting Lopez's complaint of daily myalgias, back pain, and stiffness with decreased range of motion), 927 (assessing pain, stiffness, and weakness in lower back, with associated work limitations), 930 (noting Lopez's complaint of pain and discomfort with ambulation), 935 (assessing pain, stiffness, and weakness in lower back, with associated work limitations).

tunnel syndrome, prescribing bilateral wrist braces to be worn at night and during work); *see also* A.R. 35 (noting that Lopez required right carpal tunnel release in December 2011 and intended to undergo same procedure on left hand; limiting her to frequent manipulative activity). Thus, Dr. Sayegh may have been able to provide a medically sound opinion regarding Lopez's hand limitations even though his own records did not document these limitations. *Cf.* A.R. 36 (earlier portion of the ALJ's decision, crediting opinions of state agency doctors who never examined Lopez but conducted a review of her records).

The ALJ concluded that the limitations assessed by Dr. Sayegh were "completely inconsistent with [Lopez's] activities of daily living." A.R. 38. As proof that Lopez has no difficulty using her hands, the ALJ cites a daily activities report that states that Lopez uses a cane and walker, prepares simple meals, and plays games on her computer. A.R. 32 (citing to A.R. 537). But the same report indicates that Lopez has difficulty bathing because "[h]er hands and legs make this very hard." A.R. 537. The report is, at the very least, ambiguous, and might reasonably be read to support the limitations assessed by Dr. Sayegh. Substantial evidence does not support the ALJ's conclusion that the hand limitations assed by Dr. Sayegh were inconsistent with the record as a whole.

### 3. The ALJ's Third Reason.

The ALJ found that Dr. Sayegh's opinion was unduly reliant on Lopez's subjective complaints. Substantial evidence does not support this finding. Dr. Sayegh's clinical records include many objective findings that support his opinion. *See supra* n. 3.

### C. Dr. Peachey.

Dr. Peachey examined Lopez in June 2012 and diagnosed pain in the knee, fibromyalgia, carpal tunnel syndrome of the left hand, asthma, and anxiety. A.R. 634-39. He opined that Lopez: (1) could occasionally lift items weighing less than ten pounds; (2) should stand or walk for no more than two hours in an eight-hour day; (3) should never climb, stoop, kneel, crouch, or crawl; and (4) could occasionally reach, handle, finger, and feel. A.R. 637-38.

1 The ALJ explained that she assigned "little weight" to Dr. Peachey's opinion because she found it "extreme and inconsistent with the greater evidence of record." A.R. 37. She suggested that the opinion might be "based on the claimant's reporting to the doctor, rather than objective exam findings." *Id.* She found Dr. Peachey's opinion to be in tension with treatment notes from Dr. Minesh Zaveri, Lopez's pain specialist. *Id.* (citing A.R. 499, 508). She noted that Lopez was on pain medication at the time of Dr. Peachey's exam, "which may have had an impact on her functioning at the exam." *Id.* Finally, she noted that Dr. Peachey's opinion was based on a single examination. *Id.*

The limitations assessed by Dr. Peachey are inconsistent with those assessed by the state agency physicians. A.R. 111, 129-31, 150-51. Therefore, the Court must determine whether the ALJ offered specific and legitimate reasons for discounting Dr. Peachey's opinion. *Cotton*, 799 F.2d at 1408.

The Court concludes that the ALJ's first reason for rejecting Dr. Peachey's opinion – that it is extreme and inconsistent with the record – is not specific because it does not cite to specific inconsistent portions of the record other than Dr. Zaveri's findings, discussed below.

The ALJ's second reason for rejecting Dr. Peachey's opinion – that it was based on Lopez's statements rather than independent evaluation – is equally unsatisfactory. To begin, the ALJ did not make an affirmative finding that Dr. Peachey's opinion was based solely on Lopez's statements; she stated only that the extreme nature of Dr. Peachey's opinion "suggest[ed]" such reliance. A.R. 37. Such speculation is no substitute for the "detailed and thorough" analysis required when an ALJ rejects an examining physician's testimony. *Cotton*, 799 F.2d at 1408. If the ALJ had engaged in such analysis, she surely would have found Dr. Peachey's opinion supported by the clinical findings he made during the course of his physical examination. A.R. 634-36. Dr. Peachey noted that Lopez used a walker, could walk without it but with a marked limp, could not toe or heel walk, and could not hop or squat. A.R. 635. He noted that Lopez's grip strength was decreased about 50%, and that her muscle strength in the arms and legs was reduced.

1  A.R. 635-36.  He also reported that Lopez had to hurry through the range-of-motion test
2  because she was afraid her legs were going to collapse.  A.R. 635.  These clinical
3  observations support Dr. Peachey's medical opinion, belying the ALJ's suggestion that
4  his opinion was based solely on Lopez's statements.

5  Nor is the ALJ's third reason specific and legitimate.  It is true that Dr. Peachey's
6  findings in June 2012 regarding Lopez's gait, heel walking, toe walking, and strength in
7  the extremities differ from the findings made by Dr. Zaveri in January and February
8  2011.  *Compare* A.R. 499, 508 *with* A.R. 635.  But Dr. Zaveri's notes predate Dr.
9  Peachey's opinion by more than a year.  The ALJ did not exclude the possibility that
10 Lopez's condition may have worsened between February 2011 and June 2012.  Nor did
11 the ALJ explain why Dr. Zaveri's notes should be considered more reliable than Dr.
12 Peachey's opinion.  If anything, Dr. Peachey's opinion would seem to be more reliable:
13 unlike Dr. Zaveri, who was primarily concerned with alleviating Lopez's pain and had no
14 particular reason to focus on her ability to ability to walk, lift, carry, handle, and finger,
15 Dr. Peachey was conducting a physical examination for the express purpose of opining
16 on Lopez's ability to perform these functions. *Cf. Widmark v. Barnhart*, 454 F.3d 1063,
17 1068 (9th Cir. 2006) ("It is reasonable . . . to expect that Widmark's examining
18 physicians focused their attention on the subject of his complaint.  But just as no
19 reasonable person would expect a podiatrist seeing a patient who complains of foot
20 problems to thoroughly examine the full range of that patient's hearing, it is unreasonable
21 to expect Widmark's examining physicians undertook a thorough range of motion
22 evaluation of Widmark's right thumb" when focused on other health issues.).  Because
23 the ALJ failed to provide a detailed and thorough analysis of the alleged conflict between
24 Dr. Peachey's opinion and Dr. Zaveri's notes, the conflict does not provide a specific and
25 legitimate reason for discounting Dr. Peachey's opinion.

26 The ALJ's fourth reason also misses the mark.  The fact that Lopez was on pain
27 medication at the time of Dr. Peachey's exam would not seem to render the findings
28 unreliably favorable toward Lopez's disability.  If anything, such mediations would likely

- 15 -

mask some of her disability. *Compare* A.R. 34 (finding Lopez's testimony unreliable because it failed to account for beneficial effects of medications and treatments).

Finally, the fact that Dr. Peachey's opinion was based on a single examination is relevant, but is not, standing alone, a legitimate reason for rejecting his opinion. It simply cannot be said that every one-time examination is inaccurate. *Lester*, 81 F.3d at 831 (an ALJ must give specific and legitimate reasons for rejecting the testimony of an examining, but non-treating physician).

## V.     Other Issues.

Lopez argues that the ALJ committed harmful error by improperly discounting the medical opinion of Renee Behinfar, Psy.D, an examining psychologist, failing to consider evidence that she suffered from fibromyalgia, failing to consider her obesity, and giving too little weight to her boyfriend's testimony. Because the Court has already identified grounds for reversal, it need not address these additional arguments.

## VI.    Remedy.

Where an ALJ fails to provide adequate reasons for rejecting evidence of a claimant's disability, the Court must credit that evidence as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Garrison*, 759 F.3d at 1020 (internal citations omitted). Courts may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1020.

The relevant factors require the Court to remand for an award of benefits. The record has been fully developed. The ALJ failed to provide a legally sufficient reason for rejecting the medical opinions of Drs. Sayegh and Peachey, and these opinions, if

credited as true, would require the ALJ to enter an award of benefits.  *See* A.R. 83 (testimony of vocational expert, stating that a person with the limitations assessed by Dr. Peachey would be disabled).  The Court's independent evaluation of the record fails to reveal any substantial grounds for doubting that Lopez is disabled.  Therefore, remand for an award of benefits is the appropriate remedy in this case.

**IT IS ORDERED** the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits based on Lopez's application dated November 14, 2011, with a finding of disability beginning December 31, 2008.

Dated this 8th day of July, 2016.

_____
David G. Campbell
United States District Judge